IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CONRAD ELIOT DICKSON                                                                PETITIONER

V.                              CASE NO. 5:10-CR-50124

UNITED STATES OF AMERICA                                                        RESPONDENT

OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R & R") (Doc. 62) filed in this case on November 23, 2015, by the Honorable Erin L. Setser, United States Magistrate Judge for the Western District of Arkansas, regarding Petitioner Conrad Eliot Dickson's Petition for Writ of Error Coram Nobis (Doc. 61). In response to Judge Setser's recommendation that the Petition be dismissed, Dickson filed timely Objections (Doc. 64) on January 4, 2016. The Court has now conducted a *de novo* review of the record, focusing in particular on the portions of the R & R to which specific objections have been made, in accordance with 28 U.S.C. § 636(b)(1)(c). After considering these objections, the Court finds that Dickson's Petition was timely filed, but agrees with the Magistrate Judge that the Petition lacks merit. For the reasons explained herein, the Court will **DECLINE IN PART** to adopt the conclusion of the Magistrate Judge as to the untimeliness of Dickson's Petition, but will **ADOPT IN TOTO** the Magistrate Judge's recommendation that the Petition be denied on the merits.

I. BACKGROUND

On December 6, 2010, Dickson waived indictment and pleaded guilty to an Information charging him with one count of conspiring to use an interstate facility to promote, manage, establish, carry on, and facilitate an unlawful activity, namely

prostitution, in violation of 18 U.S.C. §§ 1952(a)(3)(A) and 371. He was sentenced by the Honorable Jimm Larry Hendren to twelve months of imprisonment, three years of supervised release, a $2,000.00 fine, and a $100.00 special assessment. He did not directly appeal his conviction but filed a habeas petition pursuant to 18 U.S.C. § 2255, which was denied on November 19, 2012 (Doc. 35).[1]

Dickson served his sentence and was released from prison in July of 2012. Shortly after that, he began his three-year term of supervised release. In March of 2013, he was informed by his probation officer that the state of Arkansas required him to register as a sex offender pursuant to the Sex Offender Registration Act ("SORA"), Ark. Code Ann. § 12-12-901, *et seq.* Dickson objected to the registration requirement and on April 15, 2013, filed a document with the Court entitled "Request for Clarification of Judgment and Commitme[n]t" (Doc. 39), which asked the Court to find that he should not be required to register under the SORA because his Plea Agreement, Judgment, and Commitment Order never contemplated him doing so.

On May 5, 2013, the Court denied Dickson's Request for Clarification and issued a brief Order (Doc. 41), explaining that "whether the Judgement and Commitment Order explicitly states a requirement to register as a sex offender has no bearing on whether the laws of the State of Arkansas will require Mr. Dickson to register." *Id.* at p. 2.

---

[1] The habeas petition made claims about his counsel's ineffectiveness, but it did not address the new argument that is the subject of Dickson's Petition for Writ of Error Coram Nobis, namely, that his counsel was ineffective in failing to inform him that he might be required under Arkansas law to register as a sex offender as a consequence of pleading guilty to the federal charge.

2

After Dickson completed his term of supervised release in July of 2015, he filed a Petition for Writ of Error Coram Nobis (Doc. 61) on November 11, 2015, arguing that his counsel was ineffective in failing to advise him of the registration requirements under the SORA, and that he would not have pleaded guilty to the charge in the Information had he known he would have been required to register as a sex offender. The Magistrate Judge determined, first, that although there is no specific time limit for seeking a writ of error coram nobis, due diligence is required, and Dickson did not diligently pursue this relief from the time he first became aware of the registration requirement in March of 2013 until he filed his Petition more than two years later. Second, the Magistrate Judge determined that Dickson's Petition should be denied on the merits because an ineffective assistance of counsel claim cannot rest on counsel's failure to advise about the collateral effects of a guilty plea and conviction, and the requirement to register as a sex offender under state law is a collateral, rather than direct, consequence of conviction.

## II. OBJECTIONS

Dickson's first objection is that the Magistrate Judge erred in finding that he did not exercise due diligence in filing his Petition until nearly two-and-a-half years after he was first advised by his probation officer of the registration requirement. He contends that although he could have filed a second, successive § 2255 petition regarding this registration issue while he was still serving his term of supervised release, he elected not to do so for various strategic reasons, including the fact that his first § 2255 petition had already been denied. Dickson instead waited four months after his supervised release ended to file a coram nobis petition.

The Court finds that Dickson's first objection should be sustained, as the Court considers that, under the circumstances, he did not fail to act with due diligence in pursuing the Petition for Writ of Error Coram Nobis now before the Court. Coram nobis relief under 28 U.S.C. § 1651 is available as a remedy to vacate a federal conviction when the sentence imposed has already been served. Indeed, the Supreme Court has recognized that "[a]lthough the term has been served, the results of the conviction may persist." *United States v. Morgan*, 346 U.S. 502, 512 (1954). For these reasons, a court may rule on a petition for writ of error coram nobis when the defendant is no longer subject to a restraint on his liberty by no longer being "in custody." *Id.* at 510-11. Those who are on supervised release are still considered "in custody." *See Masten v. United States*, 752 F.3d 1142, 1146 n.2 (8th Cir. 2014); *United States v. Goodwin*, 116 Fed. App'x. 879, 880 (9th Cir. 2004). Although he was aware of the requirement to register as a sex offender under the SORA more than two years before he filed his Petition, Dickson's decision to seek coram nobis relief a few months after completing his term of supervised release, rather than request leave of Court to file a second § 2255 petition, was a tactical decision on his part—although not necessarily a prudent one—that, at least for the Court's purposes when evaluating this instant Petition, does not evidence the sort of undue delay or intentional lack of due diligence that should lead to automatic dismissal of the Petition without an inquiry into its merits.

Continuing, then, to the merits of the Petition, Dickson objects to the Magistrate Judge's finding that his counsel was not ineffective even though she failed to advise him prior to his guilty plea about the possibility that he would be required by the state of Arkansas to register as a sex offender following his federal conviction. Under *Strickland*

4

*v. Washington*, 466 U.S. 668 (1984), a petitioner must satisfy a two-part test in order to demonstrate ineffective assistance. First, he must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Id.* at 687. Second, he must show prejudice by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and he would have insisted on going to trial. *Anderson v. United States*, 393 F.3d 749, 753-54 (8th Cir. 2005), *cert. denied*, 546 U.S. 882 (2005) (quoting *Strickland*, 466 U.S. at 694); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (finding that *Strickland* test applies to ineffective assistance claims arising out of the plea process). Both prongs of the *Strickland* test need not be addressed by the Court "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In her R & R, Judge Setser focused on the first part of the *Strickland* test, which asks whether counsel's representation fell below an objective standard of reasonableness. Judge Setser correctly pointed out that "[r]egistration as a sex offender is a collateral effect and improper advice as to such a collateral effect does not support an ineffective assistance of counsel claim." (Doc. 62, p. 3). The Court agrees that according to longstanding Eighth Circuit precedent, "the accused need only be informed of the 'direct consequences' of the guilty plea . . . . [and] [i]t is not necessary to attempt to inform the defendant of all the indirect or collateral consequences." *George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984). In distinguishing between direct and collateral consequences of pleading guilty, the decision "turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id.*

5

With regard to Arkansas' SORA, the Eighth Circuit has held that the General Assembly's purpose in passing the SORA was "to create a civil, non-punitive regulatory scheme," in order "to protect public safety and not to punish sex offenders." *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1017 (8th Cir. 2006). Accordingly, as the legislature considered SORA to be a civil commitment law, not a criminal statute, the SORA created the Sex Offender Assessment Committee, which is tasked with developing a protocol to assist Arkansas courts in making determinations about whether or not a person adjudicated guilty of a sex offense should be considered a sexually dangerous person and assigned a "risk level." *See* Ark. Code Ann. § 12-12-917(a)(1), (h)(1)(A). The requirement to register under the SORA ultimately depends on whether a given offense of conviction qualifies as a "sex offense, aggravated sex offense, or sexually violent offense," as defined by the SORA. Ark. Code Ann. § 12-12-905(a)(1). Accordingly, the consequences resulting from classification under the SORA: (1) are intended to be non-punitive, and (2) do not definitely and automatically follow the entry of a defendant's guilty plea, but are instead dependent on many variables, including the Sex Offender Assessment Committee's evaluation of the defendant's crime in relation to certain definitions set forth in the SORA.

Dickson disagrees with the above interpretation of the SORA's registration requirement and maintains that, since the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010), courts may no longer employ the collateral/direct distinction to evaluate ineffective assistance claims. In *Padilla*, the Supreme Court found that defense counsel's failure to advise the defendant about the deportation consequences of his guilty plea violated his Sixth Amendment right to counsel and supported a claim of ineffective

6

assistance. The Court observes, however, that this ruling in *Padilla* was explicitly held to apply to "the unique nature of deportation," *id.* at 365, which the Supreme Court recognized was "difficult to classify as either a direct or a collateral consequence" of a conviction, *id.* at 366. Further, the deportation context is wholly distinguishable from other consequences of a guilty plea, including sex offender registration requirements, because a defendant's removal from the country following his criminal conviction is, in the Supreme Court's view, "practically inevitable"—in other words, automatic—given the lack of discretion the Attorney General possesses in removal proceedings. *Id.* at 364.

After *Padilla* was decided, the Supreme Court clarified that it "never attempted to delineate the world of 'collateral consequences'" in that case, and instead recognized that there were certain "effects of a conviction commonly viewed as collateral[,] includ[ing] civil commitment, civil forfeiture, *sex offender registration*, disqualification from public benefits, and disfranchisement." *Chaidez v. United States*, 133 S.Ct. 1103, 1108 n.5 (2013) (emphasis added). Moreover, the *Padilla* Court determined that it "need not consider" the question of whether the direct/collateral distinction was an appropriate framework to use in general, given the specific facts at issue in *Padilla*, and the fact that "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." *Padilla*, 559 U.S. at at 365-66.

This Court concludes that examining the collateral/direct distinction in evaluating *Strickland* claims is still favored by courts around the country, including the Eighth Circuit, as a means of determining whether counsel's advice or failure to advise is reasonable. *See, e.g., George v. Black*, 732 F.2d at 111. The failure to advise Dickson as to the

7

possible registration requirements of the SORA did not constitute ineffective assistance, as the consequence was merely collateral to his guilty plea, and not an automatic result of the plea. For that reason, the Court finds that Dickson's Sixth Amendment right to counsel was not violated due to ineffective assistance, his second objection is overruled, and his Petition for Writ of Error Coram Nobis will be denied.[2]

### III. CONCLUSION

**IT IS HEREBY ORDERED** that the Court **DECLINES TO ADOPT IN PART** the recommendation of the Magistrate Judge in the R & R (Doc. 62) as to the untimeliness of Dickson's Petition for Writ of Error Coram Nobis, but **ADOPTS IN TOTO** the recommendation that the Petition be denied on the merits. For these reasons, Conrad Eliot Dickson's Petition (Doc. 61) is **DENIED**.

**IT IS SO ORDERED** on this 9th day of May, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[2] Dickson's third and final objection, in which he asks that his Petition be alternatively construed as one for relief from a judgment or order under Rule 60(b)(4) or (d)(3), is also overruled. For the reasons explained in this Opinion, Dickson's Judgment and Commitment Order are not void due to ineffective assistance, and Dickson has not presented a legal reason as to why the Judgment and Commitment Order should be set aside due to fraud or mistake.